UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLAUDEL LAROSE,            ) | 3:24-CV-00940 (SVN) |
|    *Plaintiff*,            ) | |
|                            ) | |
| v.                         ) | |
|                            ) | |
| CITY OF STAMFORD, *et al.* ) | |
|    *Defendants*.          ) | May 16, 2025 |

## RULING ON DEFENDANT'S PARTIAL MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Claudel Larose has brought this employment discrimination action against Defendants City of Stamford, Samson Alemseghed, and Michael Pensiero, his former employer and supervisors. In his amended complaint, Plaintiff asserts eleven claims for racial discrimination and retaliation, along with various state law claims.[1]

Defendant City of Stamford (the "City") has moved to dismiss Count Eight, Plaintiff's claim of wrongful termination in violation of Connecticut public policy, for failure to state a claim upon which relief can be granted. The City argues that Plaintiff failed to state a claim because he does not allege that his physical safety was ever in danger, and he is not otherwise without remedy for the alleged unlawful conduct. Plaintiff opposes the motion, emphasizing the severity of the factual allegations and asserting that he alleged threats to his physical safety and experienced emotional harm. For the reasons described herein, Defendant's motion is GRANTED.

---

[1] Specifically, Plaintiff asserts the following claims: (1) a state-law claim of racial discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA") (Count One); (2) a CFEPA retaliation claim (Count Two); (3) Title VII retaliation claim (Count Three); (4) intentional infliction of emotional distress (Count Four); (5) racial discrimination in violation of Title VII (Count Five); (6) racial discrimination in violation of 42 U.S.C. § 1981 (Count Six); (7) violation of the Connecticut Whistleblower Protection Act Conn. Gen. Stat. § 31-51m (Count Seven); (8) common law wrongful termination in violation of the Connecticut public policy embodied in Conn. Gen. Stat. § 31-49 (Count Eight); (9) common law constructive discharge (Count Nine); (10) racial discrimination and retaliation in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count Ten); and (11) race discrimination and retaliation in violation of the First Amendment and 42 U.S.C. § 1983 (Count Eleven).

I.    **FACTUAL BACKGROUND**[2]

The Court accepts the following allegations in Plaintiff's complaints as true for purposes of deciding Defendant's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff, who is African American, commenced employment with Defendant City of Stamford in 2000 at the age of sixteen and held various roles, including intern, seasonal officer worker, and full-time employee within the City's information technology department. Am. Compl., ECF No. 27 ¶¶ 13–14, 17, 26, 30, 52. At the relevant times, Plaintiff's supervisor was Defendant Alemseghed, who is also African American. *See id.* ¶¶ 27–28, 40, 48. Plaintiff alleges he was constructively discharged from his employment with the City of Stamford in 2022, after twenty-two years of working there. *Id.* ¶¶ 13, 19.

At various points in Plaintiff's tenure working for the City of Stamford and working under Alemseghed's supervision, Alemseghed engaged with Plaintiff in manners that extended beyond his role as supervisor, leaving Plaintiff feeling uncomfortable, harassed, and targeted based on his race. For example, Alemseghed attended Plaintiff's college graduation without being invited; exhibited emotional behavior, including crying and expressing pride in Plaintiff's achievements, during Plaintiff's interview for a promotion; and visited Plaintiff in the hospital without an invitation and against Plaintiff's wishes. *Id.* ¶¶ 38, 48, 49, 53. Alemseghed later used his presence at Plaintiff's graduation and visits to the hospital as leverage in a pattern of emotionally manipulative behavior, causing Plaintiff to feel he "owed" something to Alemseghed for being hired. *Id.* ¶¶ 41, 50, 54, 151.

Plaintiff also was subjected to repeated instances of emotional intimidation, including but not limited to "race-based oppression, harassment, bullying, emotional/mental abuse by way of

---

[2] The Court summarizes only those portions of Plaintiff's fifty-eight page complaint that are relevant to Count Eight.

gas lighting, stonewalling, manipulation, and intimidation." *Id.* ¶ 19; *see also, e.g.*, *id.* ¶¶ 36–37, 42–43, 55, 70, 87. For example, Plaintiff was "micromanag[ed]," experienced "unnecessary surveillance," screamed at, bullied, and humiliated with increasing frequency across his twenty-two-year tenure as an employee for the City. *See id.* ¶¶ 27, 50, 63–65, 70–72, 74–75, 79, 87. This intimidation worsened after Plaintiff reported instances of waste, mismanagement, and misallocation within the City of Stamford's technology division. *Id.* ¶¶ 67, 88–90.

In October of 2021, while Plaintiff was in his employer's parking garage, Alemseghed called Plaintiff over to him and showed him a firearm. *Id.* ¶¶ 109–11. Alemseghed removed the firearm from his rear pant holster, placed it on his own palm, and said "Look!" *Id.* ¶ 109. Although Alemseghed's finger was not on the trigger, the firearm was pointed toward Plaintiff and made him fear for his life and safety. *Id.* ¶¶ 110–12.

Following the firearm incident, Plaintiff perceived Alemseghed's emotional intimidation as more inherently threatening and intimidating. *Id.* ¶ 123. Plaintiff then filed numerous reports about Alemseghed's behavior with the City's supervisors, managers, and Human Resources ("HR") department, but no action was ever taken. *Id.* ¶¶ 132–33, 135–38, 140, 142–45, 153, 163–65, 171–74, 181, 189. At the direction of HR, Plaintiff also spoke with a police sergeant regarding the firearm incident, but he never heard from the sergeant again. *Id.* ¶ 142.

By September 7, 2022, the conditions of Plaintiff's employment were no longer tolerable, resulting in Plaintiff's constructive discharge. *Id.* ¶ 180.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed

allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.  DISCUSSION

For the reasons discussed below, Plaintiff's claim for common law wrongful termination in Count Eight is dismissed. Specifically, Plaintiff is not otherwise without remedy for the allegations in Count Eight, and the public policy concerns embodied in Count Eight are already

4

encompassed by Plaintiff's factual allegations under his CFEPA and Title VII claims in Counts Two and Three.  Therefore, the Court grants Defendant's motion to dismiss.

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary."  *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697 (2002) (quotation marks and citation omitted).  However, "public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will."  *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 476 (1980) (collecting cases).  Specifically, a common law exception to at-will employment exists "if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy."  *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679 (1986) (emphasis in original) (quoting *Sheets*, 179 Conn. at 475).  But this public policy exception is "a narrow one."  *Parsons v. United Tech. Corp.*, 243 Conn. 66, 79 (1998).  "[C]ourts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation."  *Sheets,* 179 Conn. at 477.

To succeed on a claim of wrongful termination in violation of public policy, a plaintiff must first demonstrate that their termination contravenes clear public policy.  *Thibodeau,* 260 Conn. at 699–701.  Courts will reject claims that are not "predicated upon an employer's violation of an important and clearly articulated public policy."  *Id.* at 701; *see also Howard v. Flagstar Bank,* 599 F. Supp. 3d 71, 79 (D. Conn. 2022) (noting that for wrongful termination in violation of public policy "the court examines whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision or contravened any judicially conceived notion of public policy").

Second, a plaintiff must also prove they are "'otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.'" *Apatow v. Town of Stratford*, 651 F. Supp. 3d 573, 589 (D. Conn. 2023) (quoting *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 405 (D. Conn. 2013)); *see also Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 159–60 (2000). Under Connecticut law, a common law wrongful termination claim is barred when there is an adequate statutory remedy available to the plaintiff that addresses the same public policy concerns. *Lopez,* 952 F. Supp. 2d at 405; *see also Burnham*, 252 Conn. at 161–62 ("[E]ven if we were to assume that the plaintiff's termination violated the public policy embodied in [a statute], we would still conclude that the plaintiff's claim is precluded by virtue of the existence of a statutory remedy under that statute."). When "a relevant state or federal law contains a private right of action which serves to protect the public policy allegedly violated, a wrongful discharge claim will fail." *Nanos v. City of Stamford,* 609 F.Supp.2d 260, 268 (D. Conn. 2009).

Plaintiff alleges his termination violates the safe workplace public policy embodied in Connecticut General Statutes Section 31-49. Am. Compl. ¶ 246. Specifically, Plaintiff alleges that his supervisor, Defendant Alemseghed, threatened him with a firearm at work, subjected him to a repeated pattern of emotional and psychological abuse, and that he, along with Defendant Pensiero, "created an unsafe work environment" that posed a such a significant threat to Plaintiff's emotional and physical wellbeing that he was constructively discharged. *See* Am. Compl. ¶¶ 27, 38, 41, 50, 53, 54, 109–12, 246–52.

Section 31-49 provides that "[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work . . . and fit and competent persons as colaborers." This section "reflect[s] a broad legislative concern for the physical welfare

6

and safety of Connecticut employees" and ensures that an employee may not be "discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties." *Parsons,* 243 Conn. at 80.  When assessing whether such unsafe conditions exist, Courts apply an objective lens.  *Id.* at 86.

Further, such conditions do not extend to those that cause emotional harm; rather, they only include those that cause physical harm and threats of physical harm.  *See Cunningham v. Stamford Health Med. Group, Inc.*, No. 3:22-cv-1005-MPS, 2023 WL 4826468, at *4 (D. Conn. July 27, 2023) ("courts have generally limited Section 31-49 policy violations to physical harm or at least, serious threats of physical harm"); *Gonzalez v. Lecoq Cuisine Corp.,* No. CV136037490S, 2015 WL 2166662, at *1 (Conn. Super. Apr. 8, 2015) (rejecting the court's prior determination that emotional distress is actionable under Section 31-49 on reargument and holding that "[w]hile emotional distress is an actionable injury under many statutes and common-law causes of action, this court does not recognize it as a cause of disease or physical harm under § 31–49."). Consequently, to successfully allege wrongful discharge on the basis of violations of the public policy embodied in section 31-49, a plaintiff must allege physical harm or threats of physical harm.

Much of Plaintiff's amended complaint alleges emotional harm and psychological impact that his supervisor's alleged hostility had on him, which is not actionable under section 31-49.  But he does also allege that he was "threatened with a firearm at work" and describes the incident in detail.  Am. Compl. ¶¶ 109–11, 246, 248; *see also* Pl.'s Br., ECF No. 42 at 2–12.  Plaintiff further alleges that he raised his safety concerns stemming from the gun incident to multiple HR employees and, at their direction, a police sergeant, and that no further action was taken.  Am. Compl. ¶¶ 136–37, 142.  The Court assumes, without deciding, that, taken together, the gun

incident and the subsequent inaction by human resources would satisfy the objective unsafe work conditions standard.  *See Fiore v. United Refrigeration*, No. 3:06-CV-285 (RNC), 2006 WL 8447258, at *2 (D. Conn. Aug. 25, 2006) ("Plaintiff has alleged that he was terminated because he refused to tolerate conditions, such as being threatened with a gun, that posed a risk of serious physical harm.  Accordingly, § 31-49 provides an adequate predicate for his wrongful discharge claim.").

But even assuming his workplace was objectively unsafe, Plaintiff fails to state a claim for wrongful termination in violation of public policy because he cannot demonstrate that he is "otherwise without remedy."  *Lopez*, F. Supp. 2d at 405.  Where the hostility or danger a party endures is also the basis for other asserted claims, a plaintiff is not "otherwise without remedy" for a wrongful termination claim.  *Apatow,* 651 F. Supp. 3d at 589.  Plaintiff has other statutory remedies available to vindicate the public policy interests brought forth in Count Eight, and he has availed himself of those remedies by asserting claims under these statutes.

Specifically, Plaintiff has asserted claims under state and federal law relating to a hostile work environment and retaliation in the amended complaint.  *See*, *e.g.*, Am. Compl. Count Two (CFEPA retaliation/hostile work environment claim); Count Three (Title VII CFEPA retaliation/hostile work environment claim).  Plaintiff alleges that he was harassed, bullied, threatened, and endured a hostile work environment. *See, e.g.*, *id.* ¶¶ 199, 208, 216.  He also asserts that the gun incident was part of this broader pattern of actions contributing to his hostile work environment.  *See, e.g.*, *id.* ¶¶ 199, 216.  Defendant correctly notes that the factual allegations surrounding Plaintiff's discharge—that continued pattern of retaliatory, physically threatening, and bullying behavior—may be remedied through the other statutes under which Plaintiff has

8

brought claims.  Mot. to Dismiss, ECF No. 36-1, at 10.[3]  The hostile work environment that allegedly made Plaintiff's employment intolerable, including the incident with the firearm, is also alleged in Plaintiff's claims under CFEPA (Count Two) and the Title VII (Count Three).  *See* Am. Compl. ¶¶ 208–12, 216–20.  Because Plaintiff has other statutory means to vindicate his interest in a safe workplace, his common law wrongful discharge claim in Count Eight is precluded.  *Cf. Van Kruiningen v. Plan B, LLC*, 485 F. Supp. 2d 92, 96 (D. Conn. 2007) (holding a common law claim under a public policy could only survive amidst Title VII and CFEPA claims if it "advances a distinct and alternative theory of liability" unrelated to the other claims); *Swihart v. Pactiv Corp.*, 187 F. Supp. 2d 18, 25 (D. Conn. 2002) (precluding plaintiff's wrongful discharge claim where "[t]he public policy against retaliation is adequately vindicated through Title VII").

      Ultimately, Plaintiff is not otherwise with a remedy for the work environment he allegedly endured.  The alleged unsafe work environment that led to Plaintiff's constructive discharge, including the incident with the firearm, can be addressed by Plaintiff's claims under the CFEPA (Count Two) and Title VII (Count Three).  Accordingly, Count Eight is dismissed.

---

[3] Plaintiff does not address this argument in his response to the City's motion.  Instead, Plaintiff relies almost exclusively on how his allegations sufficiently plead a plausible harm that contradicts Connecticut public policy.  The Court acknowledges Plaintiff has alleged a physical threat to Plaintiff's safety.  And while Plaintiff does briefly argue there is no statutory right of action fully barring him from making of a "purely common law claim," *see* Pl. Br. at 18–20, he neglects to consider the reality that other statutory remedies for the allegedly problematic action that resulted in termination are sufficient to preclude a common law action under section 31-49.  *See Burnham*, 252 Conn. at 159 (holding an employee must be "otherwise without remedy" for a common law claim of wrongful discharge in violation of public policy).

## IV.    CONCLUSION

For the reasons described herein, Defendant City of Stamford's partial motion to dismiss Count Eight of the Amended Complaint is GRANTED. Defendant City of Stamford shall answer or otherwise respond to the remaining counts of Plaintiff's amended complaint by May 30, 2025.

**SO ORDERED** at Hartford, Connecticut, this 16th day of May, 2025.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE